Punitive damages in her complaint, even though, as it turns out, she actually wasn't entitled to punitive damages under the Kentucky Civil Rights Act at all. The court also included costs which are expressly excluded from 28 U.S.C. 1332 when calculating the amount of controversy. So the math here was simply incorrect. She was not entitled to any punitive damages and under the Kentucky Civil Rights Act, all she was entitled to was front pay, back pay, actual damages for things like pain and suffering, which she did not claim, and The next issue, and probably the bigger issue, is the 2000... Even though she didn't claim pain and suffering, were you precluded from, during the trial, amending the claim to ask for pain and suffering? No, and here's the issue here with respect to that is that she had no intention of ever doing that. She specifically stated in her demand letter that she was only asking for And most recently, actually, two weeks ago, January 7th, the district court addressed that exact same concern in a case called Palmer v. Service Management Systems, Inc. It's too recent for me to have a published citation, but I have a Lexis citation if the court would like it. Oh, yeah, what is that? It's 2014 U.S. D.I.S.T. Lexis 1408. And in that case, the court addressed that exact same concern, which was raised by the defendant, and stated that while an unscrupulous party might seek to abuse the process, this court is placing its reliance on counsel's statement limiting damages as an essential component of the order of remand. And an attempt to avoid that commitment would be sanctional conduct, which would also possibly justify re-removal. So she could re-remove. Sure, but even if you don't do the amendment, you know, every trial judge and instructor here is going to say there is no mathematical formula for calculating damages. And so if you're looking at those damages, and there is no mathematical calculation that could apply, why isn't it reasonable that the damage amount could have exceeded the $75,000 limit? Sure, you know, it potentially could have. And the Supreme Court has addressed this issue in the past in St. Paul and said, well, you know what, if a plaintiff wants to keep a case in federal court and to avoid that possibility, she can resort to the, quote, expedient of suing for less than the jurisdictional requirement. The problem here is that a plaintiff in Kentucky cannot do that. You can't specify the amount of damages in the complaint. And Rule 54.03 also requires that any judgment include all the damages to which the plaintiff is entitled. Now, regarding the 2011 Amendment to the Removal Statute, as the Court is aware from the brief, the statute now states that the amount specified by the plaintiff in the complaint is to consider the amount controversy for purposes of removal except in states where the state practice either does not permit a demand for a specific sum or permits recovery in excess of the amount demanded, both of which are at issue here. Rule 8.01 prohibits the demand for a specific sum, and Rule 54.03 requires that any judgment include all of the damages to which the plaintiff is entitled. Well, what did you say you're reading from there? That's the amended language of the statute governing removal, which is... All right, okay. Okay. So in those states, the statute now states that a defendant is allowed to assert a different amount than what's stated in the complaint or an amount that's in excess of the amount controversy if the plaintiff hasn't stated that amount. So you could still get more than $75,000? You can, yes. In Kentucky, you can. And the removal statute now allows the defendant to claim a different jurisdictional amount. So the argument in the defendant's response brief that the amended language somehow allows a plaintiff to now preclude removal from the outset by including a damages limitation in the complaint with the utmost respect is just simply incorrect. That amended language is specifically what allowed the defendant, in this case, to remove the case precisely because of the Kentucky Rules of Civil Procedure. And most importantly, as for the consequences of that amended language, in Egan v. Premier Scales, which is a district court case decided in 2002, so pre-amendment, the district court made the exact same observation that I made in my opening brief without having read Egan's, which I quoted in the reply brief, which was specifically that the effect of Rule 8.01 of the Kentucky Rules is to, quote, transform a state law claim into a federal matter any time a diverse defendant proves the possibility that the plaintiff might recover more than $75,000, which violates the general principle that federal courts are courts of limited jurisdiction. And literally now, because of the amended language, every single time a plaintiff files a claim against a diverse defendant under the Kentucky Civil Rights Act, it will now be turned into a federal case simply because of the amended language of the statute in the Kentucky Rules, regardless of whether or not the plaintiff has claimed any of the damages to which she is entitled or has placed the actual amount in controversy at $75,000 or more. It's an effective labor. I'm sorry, what was that? It could be an effective labor in one form or another. A labor of? A recovery in excess of $75,000. That's what I'll get to. I mean, my point is that you say every case that's filed would inevitably be a federal case, and that wouldn't be true were the plaintiff to waive recovery, effectively waive recovery, beyond $75,000. Well, and that's what this Court has never decided whether that's permitted. In 2007, the Court specifically passed on deciding that issue, and it has never considered that issue post-2011 amendment. You're saying in every case or only in cases under the Kentucky statute? In any case where the state's civil rules of procedure have a similar damages limitation, or excuse me, have a similar prohibition on specifying the amount of damages or require that a final judgment include all of the damages to which a plaintiff is entitled. The plaintiff is no longer the master of her claim. She can't resort to suing for less than the jurisdictional requirement, keeping her case in state court. A state law claim in state court where she wants to litigate it, clearly wants to litigate it because she's specifically said in a pre-complaint demand letter that she's only placing $60,000 in controversies, which is what Ms. Chute did here. That's not an offer. That's not a contract, is it? It's not, no. In this case, not only did she do that, but then post-removal she filed an affidavit, stating, I've never intended to seek more than $60,000. I have no intention of doing so in the future. I have no desire to do so, even though I understand I might be entitled to this. And the district court completely ignored that. And as for the question of whether or not that affidavit was watertight enough or sufficiently adequate to preclude her from later recovering, again, all of the cases, because there are 2011 amendment district court cases, Kentucky district court cases, no Sixth Circuit cases, where the courts have considered post-removal damages stipulations, like what you're talking about. All of those cases were decided after she submitted her affidavit in this case, meaning that counsel did not have the benefit of any guiding authority on what needed to be included in her affidavit. There was no guidance at all. There were no cases available at that time for her trial attorney to look and see, okay, well, I need to do a stipulation here, not an affidavit, or it needs to include this in this language. Her affidavit said exactly how much she intended to seek and how much she wanted to seek going forward, and that was completely ignored. And as I said earlier, if the court wants to here, it could condition any remand order on adherence to the affidavit in this case. Are there any other questions on that issue? This is the fastest ten minutes of my life every single time I'm here. But your position is she effectively waived her right, and therefore there should have been a remand. Yes, absolutely. Without the waiver, are you saying that without the waiver there would have been the jurisdictional amount there? No. First of all, first we're stating that the district court calculated that amount incorrectly because she was not entitled to punitive damages. But second, that she did waive that amount. She specified the amount she intended to place in controversy before ever filing the complaint, and she also reconfirmed that via her affidavit. So you're saying that under Kentucky law she couldn't get punitive damages, and without punitive damages there's no way to get to the $75,000. Is that what you're saying here? That's correct. And under the case law that exists in the Sixth Circuit, which required that that calculation be made at the time of removal, the court wasn't allowed to project into the future. The $68,000, though, was back pay alone. She could have recovered other matters under the statute even if she didn't seek, or even if she were ineligible for punitive damages. Isn't that so? Right. And that's why her affidavit was so important here, because she specifically said, I do not want those damages. I have no intention whatsoever of seeking those damages if the court remands the case. Now, did she plead for front pay or prospective? She didn't ask for any of that. No, Your Honor. She requested back pay only. Okay, very good. Thank you, and you'll have your rebuttal. What's the other issue, Your Honor? Good morning. Good morning. May it please the court, my name is Catherine Weber. I'm an attorney with Jackson Lewis here in Cincinnati, and I represent Aspen Tree Expert Company. With respect to the denial of the motion to remand, the counsel for the appellant has focused primarily on the affidavit that she submitted in an attempt to avoid the remand. The focus, however, first, should be on the complaint that Ms. Shoup filed in this case. And if we look specifically at the complaint, in particular at paragraph 13 of the complaint, Ms. Shoup seeks damages for lost wages and benefits, physical pain and suffering, emotional distress, requiring plaintiff to incur medical treatment and expenses for the same. In addition, in the complaint, she makes complaint claims, pardon me, not only for discrimination and retaliation under the Kentucky civil rights statute, but in addition, she also asserts tort claims for outrage, for gross negligence, and for false light, all of which would entitle the plaintiff, assuming that she can meet the burden, proof to the recovery of punitive damages. Some of those claims dropped at some point in this removal process. No, Your Honor, none of the claims were dropped. However, there was an affidavit submitted by Ms. Shoup in connection with her attempt to avoid federal court jurisdiction in which she made certain statements. An affidavit would preclude some of those claims, I would guess. What's the law in terms of whether a post-complaint affidavit can be factored into the jurisdictional amount for purposes of removal? Do you have any specific cases on that that you could share with us? Yes, Your Honor, I do. With respect to a post-removal stipulation limiting the damages... Well, not a stipulation, an affidavit. An affidavit. If we want to call it an affidavit as opposed to a stipulation, the test that's set forth in the cases set forth in our brief show that there has to be a clear and unequivocal limit of the damages to less than the jurisdictional amount required for federal jurisdiction, $75,000. And both before... Wait a minute now. Do you have a specific case that addresses what I just asked you about that you can provide here and now? I do, if you'll give me just one moment, Your Honor. Well, if you don't have that, you can go ahead. It is in the brief, I assure you, Your Honor, but it's just not... Before you continue, the affidavit that was submitted to limit the damage amount, was that filed prior to your removal or subsequent to the removal? Subsequent to the removal, Your Honor. Thank you. And, Your Honor, I believe the case that talks about the standard that has to be applied with respect to post-removal stipulation dispense versus centerline. And in addition, there have been two other district court cases that have been decided after the briefs were filed. So in addition to the legal authorities included in the brief, there are two other cases that have been filed. One would be the Palmore case, which was referred to by Appellant Counsel, and the other would be the Jester case. And in... And what did those cases say? Those cases specifically said, in Palmore v. Service Management, which was 2014 U.S. District Lexus 1408, Western District of Kentucky, January 7, 2014, the case was remanded based upon the plaintiff's post-removal stipulation stating that plaintiff will not seek or accept damages in excess of $75,000 inclusive of punitive damages, attorney's fees, and the fair value of any injunctive relief. The post-removal stipulation was accepted as clear and unequivocal. In Jester v. Kenco Logistics Services Company, 2013 U.S. District Lexus 16347, Western District of Kentucky, November 15, 2013, that case was also remanded based upon a post-removal stipulation unequivocally and clearly limiting the amount of damages. In the stipulation that was filed with the motion to remand, the plaintiff stated that plaintiff will not seek or accept an award of damages in excess of $74,999 inclusive of punitive damages, attorney's fees, and the fair value of any injunctive relief. There have also been cases decided since then in which the plaintiff attempted to include a post-removal stipulation limiting damages, but in which they were unsuccessful in doing so because it was clear and unequivocal. So is it your position that the affidavit filed in this case is somehow equivocal? That's the first part. And if we find that the affidavit represents an unequivocal statement regarding the cap on damages, then do you concede that based on the case file you gave us right now that you lose? At least on this point. If the affidavits submitted by Ms. Shoup were clear and unequivocal, then yes, you're correct. She could have avoided the removal with the post-removal stipulation limiting her damages. However, we have to study the affidavit of Ms. Shoup and actually see what she said. In her affidavit that was filed in connection with her motion to remand, she did not use the language of any of the cases that I have shared with the court. And in fact, her affidavit is more important for what it doesn't say as opposed to what it does say. There are no magic words required. It's just whether the affidavit can be fairly read as being an unequivocal statement regarding damages. Correct? I agree with you. And I said if. I agree with you wholeheartedly, Judge Donald. The issue, though, is if you read her affidavit, she states that she does not believe she was entitled to recover $75,000, that she was never told she could recover $75,000, that she never asked her attorneys to seek $75,000 to settle her claims, and that she told her attorneys to make an initial demand for $60,000. I would say that I did not seek, nor will I accept. Nor will I accept. And the problem, Your Honor, with that set of facts is that at any point on a going forward basis, perhaps if she were deposed or later in response to a discovery request, she were to ultimately say that consistent with the complaint, I want my emotional distress, humiliation, and embarrassment damages, and in addition I want my attorney's fees. And if she were to provide a calculation that were more than $75,000, which it likely would be under those circumstances, the defendant in that type of situation would be in a very difficult position because in most cases, or at least in some cases, you would be further than a year out from the time period that the complaint would be filed and that would create an additional burden and a catch-22 for the defendant, far better than to try and establish by a preponderance of the evidence what the damages sought were at the time of the removal. You know, I and others may have questions about that, but I believe counsel intends to address this statute of limitations issue in her rebuttal, so do you want to talk about that just a bit? Sure. Your Honor, in this case, when we look at the district court's decision granting summary judgment to Asplen based on the waiver that was signed, I would first direct the court's attention to the language of the waiver in itself. And there are five factors that the court should look at in determining whether or not that waiver was valid and enforceable. But at the outset, if we look at the document, we see that it is a one-page, single, stand-alone page document. It clearly includes at the top and the bottom, please read before signing. It says that it's important. It uses common language that a layperson would understand. And right above the signature line for the employee, it says, I have read and understand and am capable of understanding the document.  There's nothing inherently unreasonable about a six-month shortened statute of limitations. And certainly within the district courts in Kentucky, we have multiple examples of cases where the courts have upheld shortened statute of limitations provided that those shortened statute of limitations were entered into knowingly and voluntarily. Most recently, in the Boaz case, we have a situation where the Sixth Circuit looked at the six-month statute of limitations and they initially stated right out in front that there's nothing inherently unreasonable about a shortened statute of limitations, although the Sixth Circuit went on to say that such a shortened statute of limitations couldn't be applied to the particular claims at issue for other reasons. Now, in this case, if we look at the five factors that one must look at under the Morrison v. Circuit City case, we look at the plaintiff's background, her education, and her experience. Asplund provided the signed waiver that Ms. Shoup executed, and Ms. Shoup offered absolutely no evidence whatsoever regarding her background, her experience, or her education when she confronted that. If we look at the standard everyday definition of voluntariness when we're talking about this, because here, Ms. Shoup is applying for employment. There's a document. There are documents that are there for her to sign. So there is this little signature line that you say, but as I understand it, there's no discussion according to her about these documents, and she wants the job. So was this really sort of a negotiated agreement or was this sort of a fait accompli? You want the job, you sign these things, which is what she's saying happened. I believe in her affidavit, she does not state that anyone ever misled her about what the document said, and the document does say, I've read it and I understand it, and I'm competent to understand it. And I believe that... I like that button on the computer that says, click here if you want to... If you want to... If I've read it, I accept the terms. That's correct, Your Honor. And there's nothing, you know,  as well as in many other jurisdictions that an offer of at-will employment is sufficient to provide a job to uphold an employment agreement. And in effect, you know, this is exactly what we're talking about here and there's no dispute over that fact. In fact, the affidavit that was supplied by Ms. Shoup said that she understood that she had to sign this document in order to be employed by the company. With respect to the next factor in the analysis, we have to look at the time period that the person has in order to review a document. And again, in the affidavit, although she says she understood that she had to sign the document in order to be employed, she does not state that she asked for more time and that it was rejected. And in fact, again, we go back to the document itself which says, I read it, I understand it, I'm capable of understanding it, and I think that that really does cut against any type of argument on that point. We then look to the clarity factor that the court considers. And in this case, I suggest to you, Your Honors, that while I can't claim to be a master draftsman, I do not envision any set of circumstances where I could have drafted anything that would be more clear than the one-page, single document that was at issue in this case. The next factor is the consideration element and we've already addressed that. And the last factor under the Morrison decision is a review of the totality of the circumstances. And the court, when faced with this clear one-page, single stand-alone document, concluded that based upon all those five factors, the offer was, in fact, knowingly executed and therefore enforceable in this case. Your Honors, if you don't, do you have any more questions for me? If you do, I'd be happy to address them but I think I've covered the territory. Fairly not. Thank you, Your Honors. I'd like to just first reiterate the fact that every single case cited by the defendant regarding the language that was required for a post-removal stipulation, those are all cases that were decided after she submitted her affidavit in this case. They did not exist when her attorney and she drafted that document. There was no authority at all. So it would be unfair, if you will, to judge her affidavit based on standards that did not exist yet. The affidavit itself couldn't be any clearer. She never intended to seek more than the amount. She did not believe her claim was worth more than the $60,000 amount in her demand letter and she had no intention of seeking any more than that amount. Why is the district court not entitled to make its determination based upon what she said in her complaint without reference to the affidavit? Are there any cases that address that kind of situation? Well, Zeris Sawala specifically said that a damages calculation is not to be based on speculative claims that aren't even asserted by the plaintiff. And I also want to point out that this was a one-count complaint under the Kentucky Civil Rights Act. The other assertions regarding pain and suffering, those were actual damages that were included under that act. So there were no tort claims here. There were no punitive damages. And there are cases that allow a post-removal stipulation, but again, those are all district court cases and this court has yet to decide whether or not that... Are you saying she was asking for claims in her complaint that she would not have been permitted to recover under the Kentucky statute? Yes, she couldn't get punitive damages. Are you saying there were no such claims in the complaint? There were no tort... Although the claims were in the complaint, they were invalid claims. There were no tort claims made in the complaint at all. There were no counts for any tort. So are you saying that when Counsel referred to paragraph 13 of the complaint that that was a misstatement, a misrepresentation? No, no, no. This was a one-count complaint. I mean, it alleged one claim under the Kentucky Civil Rights Act and under the Kentucky Civil Rights Act she was entitled to actual damages, which would be doctors' appointments, medical expenses for any pain and suffering, those types of things. But she didn't make any tort claims here. She would never have been entitled to punitive damages, which is what the district court included in its calculation to reach the jury. She pleaded for punitive damages. She did, yes. But she would not have been entitled to them and that's the standard. Don't you test it against the complaint? No. The standard is the amount the plaintiff would have been entitled to at the time of removal. You said to us earlier the plaintiff is the master of the plaintiff's complaint and if the plaintiff puts in her complaint these various types of damages and seeks punitive damages the court is entitled to look at what's contained in the complaint and make a judgment based on that. Right, which again is also why the affidavit was so important here and her pre-complaint demand letter. But if I pre-follow your argument the court has to make substantive determinations about whether the complaint is appropriate before the court can make the remand. In other words the court's making decisions about the quality of the complaint. Well the only thing the court has to determine is the amount of damages the plaintiff is entitled to under the statute. And under the statute she was not entitled to punitive at all so it should not have been included. I only have 37 seconds left so I just want to point out the fact that what the waiver at issue here does not say is that you need to memorize this document because you will never see it again. She, in this case she was presented with that waiver as part of an application with a packet of documents. She was never provided with a copy of it so she would go and ask somebody what it meant. She was never told what it meant. She was told she had to sign it. The circumstances presented in her affidavit were that this was her complaint. And she was never given a copy of it even after the defendant terminated her for a copy of it. I do not know. I don't know the circumstances. I don't know if they were just taken from her and sent somewhere but the bigger issue too is that she was never given a copy of it upon her termination even though the defendant knew that she had a viable sexual harassment claim because it had just fired the person who was responsible. At the very least totality of the circumstances she should have just been given a copy of it upon her termination so that she knew that it existed. She had no idea that it existed and the odds that she had She didn't know it existed? I'm sorry? What's the antecedent? What is it? Oh, the waiver. She didn't know the waiver existed? No. She didn't remember that she had signed a waiver three years prior. She didn't even know what a waiver was and she was never given a copy of it as I said. So she couldn't have possibly complied with it here unless she literally memorized the language of it and then remembered it three years later. Are there any other questions? No and I think you're out of time. Thank you. Thank you very much. The case is submitted. When you're ready you may call the next case.